991 So.2d 875 (2008)
RICHMAN GREER WEIL BRUMBAUGH MIRABITO & CHRISTENSEN, P.A., Appellant,
v.
Michael CHERNAK, Kathleen Chernak, and The Watershed Treatment Programs, Inc., f/k/a The Watershed-Act II, Inc., a Florida corporation, Appellees.
No. 4D07-647.
District Court of Appeal of Florida, Fourth District.
March 12, 2008.
Rehearing Denied October 16, 2008.
*876 Gerald F. Richman and John R. Whittles of Richman Greer, P.A., West Palm Beach, for appellant.
Gordon A. Dieterle, Jennifer J. Kramer and Diea D. Kroulik of McClosky, D'Anna & Dieterle, LLP, Boca Raton, for appellees Michael Chernak and Kathleen Chernak.
CONNER, BURTON C., Associate Judge.
Richman Greer, P.A., (the "Richman firm") appeals the trial court's order granting a motion to strike its motion for charging lien. The Richman firm filed the motion for charging lien against its former clients, Michael Chernak and Kathleen Chernak (the "Chernaks"). At issue in this case is whether a charging lien can be litigated in a suit which has been dismissed, when the funds to which the lien would attach were obtained through a separate arbitration proceeding.
In February of 2004, the Richman firm filed a single count complaint on behalf of the Chernaks (the "original Watershed suit"). The Chernaks alleged that Watershed Treatment Programs, Inc. ("Watershed") failed to hold an annual shareholders' meeting in accordance with the corporation's shareholder agreement and Florida law. Early in the course of the Richman firm's representation, the Chernaks and Jeffrey and Lisa Miller (the "Millers"), co-shareholders in Watershed, were negotiating a pooling agreement relating to their respective interests in Watershed. Jointly representing the Chernaks and the Millers, Gerald Richman of the Richman firm negotiated the material terms and conditions of the pooling agreement and produced a final document. The Chernaks determined that the Richman firm did not protect their interests in the pooling agreement and did not advise them as to the inherent conflict of interest. The conflict of interest required the Richman firm to withdraw from representing the Chernaks in the original Watershed suit when the Millers sued the Chernaks for breaching the pooling agreement. The Millers sued the Chernaks for breaching the pooling agreement, requiring the Richman firm to withdraw from representing the Chernaks in the original Watershed suit.
The Richman firm withdrew from representing the Chernaks in February of 2005. Prior to withdrawing, the Richman firm filed a notice of charging lien in the original Watershed suit for fees and costs. The Richman firm claimed a lien on any proceeds derived "in this claim through settlement or trial."
The Chernaks retained McClosky, D'Anna & Dieterle, LLP, and a Colorado law firm to take over representation of them in the original Watershed suit. Thereafter, the Chernaks filed a notice of voluntary dismissal in the original Watershed suit without prejudice to re-file. In March of 2005, the trial court dismissed the original Watershed suit and closed the case.
In late March of 2005, the Chernaks filed a new action against Watershed (the *877 "second Watershed suit"). In the second case, the Chernaks added additional parties and raised some additional issues regarding Watershed's refusal to hold an annual shareholders' meeting. However, on appeal, it was conceded that the second Watershed suit alleged the same material facts as the first Watershed suit, and the Chernaks asserted the same claims and substantive statutory causes of actions for Watershed's refusal to hold an annual shareholders' meeting. The second case was assigned to the same judge. The Richman firm filed a notice of charging lien in the second Watershed suit. In the second suit the notice of charging lien stated the amount the Richman firm was seeking for fees and costs, $74,041, and added a claim for interest and a claim for attorneys' fees in pursing the lien.
While the second Watershed suit was pending, the Chernaks were named respondents and counter-claimants in an arbitration proceeding initiated by Watershed against them. The issues raised in the arbitration proceeding were the same as those raised in the first and second Watershed suits. The Richman firm also filed a notice of charging lien in the arbitration proceeding.
In June of 2005, the Chernaks and Watershed executed a handwritten settlement agreement which outlined the terms by which Watershed would purchase the Chernaks' stock in the company as well as other provisions, including dismissal of all pending claims. In September of 2005, following Watershed's motion to enforce the settlement agreement in the arbitration proceeding, a final hearing was held in the arbitration proceeding to determine whether the handwritten settlement agreement was valid and enforceable. In November of 2005, the arbitration panel granted Watershed's motion to enforce the settlement agreement and entered the arbitration award enforcing the settlement agreement. In addition to requiring the parties to dismiss the second Watershed suit, the arbitration award required McClosky, D'Anna & Dieterle, LLP to hold $75,045[1] in its trust account in order to satisfy any outstanding liens.
In December of 2005, a joint stipulation dismissing the second Watershed suit with prejudice was adopted and approved by the trial court. There was no language in the order expressly reserving jurisdiction in the trial court to entertain any post-dismissal motion to enforce a charging lien.
In July of 2006, the Richman firm filed a motion to enforce its charging lien in the original Watershed suit. The Chernaks filed a motion to strike the Richman firm's motion to enforce. The trial court heard arguments on the motion to strike and granted the motion. The trial court's order stated that the "Motion to Enforce Charging Lien is stricken, without prejudice to the Law Firm's right to pursue a lien against the arbitration proceeds within the ambit of that proceeding or by a separate proceeding."
The trial court reasoned that "the charging lien only applies if there are settlement proceeds" and "there are no proceeds from the 2004 case.... because the case got dismissed." During the hearing, the Richman firm agreed that "the corpus didn't spring directly from this case," and that the corpus came from a settlement agreement in the arbitration proceeding. The trial court opined that what the Richman *878 firm was trying to do was "assert a lien on something that is not in front of [the court].... And I think that has to be brought by an independent action." The trial judge found "there is not a lien within the ambit of the 2004 case that I can enforce."
On appeal, the Richman firm argues that the trial court abused its discretion because it is not necessary to have a specific settlement sum to activate the court's jurisdiction to grant or deny a motion to enforce a charging lien. The Richman firm asserts all that is necessary to invoke the court's jurisdiction to grant or deny a charging lien is the filing of a notice of charging lien prior to dismissal of the action, which the Richman firm filed. The Chernaks assert that the Richman firm cannot get around the fact that there was no judgment or settlement obtained in the original Watershed suit, and litigation over the charging lien should attach to the arbitration proceeding or the second Watershed suit.

Legal Analysis
"The charging lien is an equitable right to have costs and fees due an attorney for services in the suit secured to him in the judgment or recovery in that particular suit." Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom, 428 So.2d 1383, 1384 (Fla.1983); Rudd v. Rudd, 960 So.2d 885, 887 (Fla. 4th DCA 2007). In Litman v. Fine, Jacobson, Schwartz, Nash, Block & England, P.A., 517 So.2d 88, 91 (Fla. 3d DCA 1987), the court explained:
Although Florida, unlike many American jurisdictions, has not codified this common law lien, its courts have long acknowledged the appropriateness of such a lien and the justification for allowing resolution by proceedings in equity: "The law is settled in this jurisdiction that a litigant should not be permitted to walk away with his judgment and refuse to pay his attorney for securing it. It is further consistent with law that an attorney's lien in a case like this be enforced in the proceeding where it arose. The parties are before the court, the subject matter is there, and there is no reason whatsoever why they should be relegated to another forum to settle the controversy." In re Warner's Estate, 160 Fla. 460, 464, 35 So.2d 296, 298-99 (1948) (citations omitted).
In order for a trial court to properly impose a charging lien, an "attorney must show: (1) an express or implied contract between attorney and client; (2) an express or implied understanding for payment of attorney's fees out of the recovery; (3) either an avoidance of payment or a dispute as to the amount of fees; and (4) timely notice." Daniel Mones, P.A. v. Smith, 486 So.2d 559, 561 (Fla.1986) (citing Sinclair, 428 So.2d at 1385). Timely notice is the only requirement for perfecting a charging lien. See Sinclair, 428 So.2d at 1385. "In order to give timely notice of a charging lien an attorney should either file a notice of lien or otherwise pursue the lien in the original action." Daniel Mones, P.A., 486 So.2d at 561 (citations omitted). "It is not enough to support the imposition of a charging lien that an attorney has provided his services; the services must, in addition, produce a positive judgment or settlement for the client, since the lien will only attach to the tangible fruits of the services." Rudd, 960 So.2d at 887 (quoting Mitchell v. Coleman, 868 So.2d 639, 641 (Fla. 2d DCA 2004)).
The Chernaks do not dispute that the Richman firm has a right to litigate a charging lien for its services, although they contest that the Richman firm did anything that produced "tangible fruits" for its service. The Chernaks also do not dispute that the Richman firm had a legal *879 right to file a notice of charging lien in the original Watershed suit. Instead, the Chernaks contend that because the original Watershed suit was dismissed with no judgment or settlement obtained, the original Watershed suit is an improper forum for the litigation. The Chernaks further argue that the arbitration proceeding, or perhaps the second Watershed suit, is the proper forum for charging lien litigation since the fact finder in those forums will be better able to determine the significance of the work that the Richman firm did as it relates to the corpus of the settlement agreement.
There are two problems with the Chernaks' argument. As discussed above, if an attorney's charging lien "is an equitable right to have costs and fees due an attorney for services in the suit secured to him," Sinclair, 428 So.2d at 1384, it does not appear appropriate to seek enforcement of the lien in forums where the attorney has not directly participated. Moreover, the Chernaks' argument ignores the common law in this state that timely notice is the only requirement for perfecting a charging lien. See Sinclair, 428 So.2d at 1385. The lien cannot be pursued if it is not perfected. Perfection of a charging lien typically occurs before the outcome of the case is known. For a lien to be enforceable, an attorney must prove his or her services resulted in "tangible fruits." Whether the attorney's services produced "tangible fruits" is an issue of proof, but it is not an issue of subject matter jurisdiction. As the Richman firm points out on appeal, it may not prevail in proving its services in some way contributed to the production of a settlement agreement which brought legal proceedings between the Chernaks and Watershed to an end, but that does not deny the Richman firm access to litigate that issue in the forum where it directly represented the Chernaks.
There is a preference in the law for pursuing charging liens in the original action where the attorney's work is performed, and there is a policy reason for that preference. As our supreme court explained in Sinclair, 428 So.2d at 1385:
The policy underlying the granting and enforcement of charging liens was clearly expressed early in their development in this state:
While our courts hold the members of the bar to strict accountability and fidelity to their clients, they should afford them protection and every facility in securing them their remuneration for their services. An attorney has a right to be remunerated out of the results of his industry, and his lien on these fruits is founded in equity and justice.

Carter [v. Bennett], 6 Fla. [214,] at 258 [1855] (emphasis in original). The intervening years have not diminished the attorney's duty of loyalty and confidentiality to his client. For this reason, proceedings at law between attorney and client for collection of fees have long been disfavored. The equitable enforcement of charging liens in the proceeding in which they arise best serves to protect the attorney's right to payment for services rendered while protecting the confidential nature of the attorney-client relationship.
Granting the motion to strike in this case was comparable to granting a motion to dismiss for lack of subject matter jurisdiction. In ruling on the motion, the trial court focused whether or not the corpus was within the "ambit" of the court's control. The trial court concluded that because the corpus of the settlement in this case was never under its "ambit" in the original Watershed suit, the court had no *880 jurisdiction to grant or deny a charging lien.
Research reveals only two cases in Florida which discuss charging liens and the control of the court over the corpus sought to be impressed with the lien. In a footnote in Litman, the court discussed charging liens as they pertain to settlement cases, and stated the following:
In settlement cases, the attorney is no less entitled to have a properly asserted charging lien enforced by the court, but if the underlying proceeding has been closed, the attorney may be relegated to an independent suit in equity to enforce the lien. Where the funds sought to be impressed by lien are part of a recovery by judgment, the court retains jurisdiction to hear any motion affecting the judgment until it is fully executed, and the attorney may proceed in that suit to have his lien established. Where, however, there has been a settlement, the funds may be outside the custody of the court, making the assertion of a lien "before the close of the original proceeding," Daniel Mones, P.A. v. Smith, 486 So.2d 559, 561 (Fla.1986), essential to maintenance of the right in the original action to enforce the lien against the settlement proceeds.
517 So.2d at 92 n. 4 (Emphasis added). There is also the concurring opinion by Justice Boyd in Daniel Mones, P.A. in which Justice Boyd concluded that a charging lien was improper for a reason different from that stated in the majority opinion:[2]
I agree that there was no charging lien on the settlement proceeds because after settlement and dismissal of the litigation there was no judgment, fund or res, within the control of the court, to which the lien could attach. (Citations omitted). The charging lien does not simply exist by operation of law but depends on some action of the court. There have been cases where this Court has approved imposition of equitable lawyer's liens on real and personal property after termination of the proceedings, but all such cases showed special equitable circumstances.
Daniel Mones, P.A., 486 So.2d at 562 (citations omitted).
There are a number of cases which speak generally about a charging lien attaching to a "judgment," "settlement," "funds," "res," or "tangible fruits," and the requirement seems to be that the attorney's services contributed to, created, or protected the corpus sought to be impressed by the lien, rather than the court having control over the corpus. For example, in Gay v. McCaughan, 105 So.2d 771, 773 (Fla.1958), the supreme court stated, "This right to recover fees against one's client, in the proceeding in connection with which the services are rendered, is solely incident to the enforcement of an equitable charging lien against the fund or res created by such services." (Citations omitted). In Robert C. Malt & Co. v. Carpet World Distributors, Inc., 861 So.2d 1285, 1288 (Fla. 4th DCA 2004), this court stated, "Because the charging lien was not attached to a judgment, settlement or some other tangible fruits of the attorney's service, we find that the trial court erred as a matter of law in disbursing the funds." In Kucera v. Kucera, 330 So.2d 38 (Fla. 4th DCA 1976), this court denied the imposition of a charging lien held in an attorney's trust account, not because the trial court did not have any control over the funds, but because a successor attorney was seeking to impose the charging *881 lien upon funds deposited into the trust account maintained by prior counsel when the successor attorney did nothing to recover the funds for the client.[3]
Even if this court were to conclude that the common law of Florida requires a court to have some control over the corpus sought to be imposed with a charging lien, this case would fall into that category of cases mentioned by Justice Boyd in Daniel Mones, P.A. which justifies the imposition of a charging lien as a matter of equity even though the court no longer has control over the corpus.[4] The same basic claim was litigated in all three proceedings. The same judge handled both court suits. The Richman firm gave notice of its charging lien in all three proceedings. Because a charging lien is an equitable right, it can be imposed only by a court and not an arbitration panel. The settlement corpus was created by an arbitration proceeding. Whatever control the circuit court has over the corpus is dictated by a settlement agreement generated through the arbitration proceeding. All the circuit court can do is determine who are the claimants to be paid from the funds and enter money judgments for those amounts.[5] Because the Richman firm is a claimant having an interest in the settlement corpus who participated only in the original Watershed suit, and since the charging lien would not have been perfected if it were not filed in the original Watershed suit, it would be more appropriate to litigate the charging lien in the first suit, rather than the second suit.
Accordingly, we reverse and remand for further proceedings consistent with this opinion.
FARMER, J., concurs.
WARNER, J., dissents with opinion.
WARNER, J., dissenting.
The majority relies almost exclusively on Justice Boyd's concurring opinion in Daniel Mones, P.A. v. Smith, 486 So.2d 559 (Fla.1986), to support the position that the Richman firm can assert a charging lien in a case which was dismissed without any recovery whatsoever in the action. Justice Boyd agreed that the attorney in that case did not have a charging lien where the case was settled, dismissed, and there was no judgment or res within the authority of the court to which the lien attachedexactly the reason why the trial court determined that no charging lien existed in this case.
Justice Boyd noted that some cases permitted the imposition of an attorney's equitable lien "on real and personal property after termination of the proceedings in which the fund or property was recovered, but all such cases showed special equitable circumstances." Id. at 562. This is the language used by the majority to permit the assertion of a charging lien in this case. However, the cases cited by Justice Boyd do not have any resemblance to the facts of this case, and in each of these cases the attorney had pursued a case to successful conclusion either by judgment or settlement.
*882 Justice Boyd cites Forman v. Kennedy, 156 Fla. 219, 22 So.2d 890 (1945), in which the court held that where an attorney recovered a judgment for the client, the attorney was entitled to a contingent fee based upon the entire judgment and not the amount the client settled for without the attorney's consent. See also Alyea v. Hampton, 112 Fla. 61, 150 So. 242 (1933). In Ward v. Forde, 154 Fla. 383, 17 So.2d 691 (1944), the court determined that the attorney was entitled to a reasonable fee for representation in a successful suit removing restrictions on real estate, and an equitable lien could be asserted against the real estate encumbered by the restrictions which were removed by the suit. The supreme court later receded from this result in Billingham v. Thiele, 109 So.2d 763 (Fla.1959), and held that an attorney could not assert a charging lien against the real property of his client unless authorized by statute or by express agreement. Knabb v. Mabry, 137 Fla. 530, 188 So. 586 (1939), allowed an attorney an equitable lien against a client's real estate where the services rendered arose out of the real estate which had been made the rem of the suit and on which the attorney had been successful for his client. To the same effect is Scott v. Kirtley, 113 Fla. 637, 152 So. 721 (1933), which dealt with an attorney who successfully obtained a judgment and recovery for his client. In short, these cases all involved an attorney's successful recovery for a client before a charging lien could be imposed.
There is no case which extends an attorney's charging lien to recover for fees expended in proceedings which do not result in the recovery of a judgment or res in that action. That is because there is nothing against which to "charge" the attorney's fees. "The charging lien is an equitable right to have costs and fees due an attorney for services in the suit secured to him in the judgment or recovery in that particular suit." Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom, 428 So.2d 1383, 1384 (Fla.1983) (emphasis added).
The Richman firm also asserted a charging lien in the re-filed suit which ultimately resulted in an arbitration settlement. Although the majority suggests that there is something inappropriate in enforcing a lien in a case where the attorney has not directly participated, I disagree. To the extent that the attorney's service produced a positive outcome for the client in that case, then the attorney is entitled to the lien on the recovery. See Rochlin v. Cunningham, 739 So.2d 1215 (Fla. 4th DCA 1999) (discharged attorney not entitled to a charging lien where her services did not produce a positive judgment in a child support proceeding where mother did not receive more in child support than father's original offer and mother pursued further litigation based upon the erroneous advice of discharged attorney). If the Richman firm can prove that its services in the first lawsuit (such as the use of extensive discovery or trial preparation) were used directly to produce the settlement in the second lawsuit, then the Richman firm should be entitled to a charging lien. On the other hand, if the services in the first lawsuit did not contribute in any way to the ultimate recovery, then no charging lien should be imposed.
In such a case, the attorney is not without a remedy. As noted in Litman v. Fine, Jacobson, Schwartz, Nash, Block & England, P.A., 517 So.2d 88, 94 n. 7 (Fla. 3d DCA 1987), "if an attorney has not claimed a charging lien or there are no proceeds to which a lien can attach, he nonetheless retains the right to sue the client on the contract in an action at law in which the client is entitled to a jury trial." (emphasis added). If the Richman firm cannot prevail on its charging lien in the *883 second suit or arbitration proceeding, then it still can pursue an action at law.
Because no recovery or judgment was obtained in the first suit, no charging lien may exist. I dissent.
NOTES
[1] The arbitration award was not produced on appeal. The $75,045 figure was taken from the Chernaks' answer brief. However, the Chernaks' motion to strike motion to enforce charging lien and incorporated memorandum of law alleges the amount held in trust is $73,690.44.
[2] The majority opinion concluded that a charging lien was improper because the attorney did not file notice of the lien in the suit in which the work was performed.
[3] The funds were voluntarily given to prior counsel by the client in connection with a dissolution of marriage proceeding.
[4] This contention assumes that the Richman firm can prove its services contributed to the corpus.
[5] Similar to Kucera, the fund sought to be imposed with a charging lien is money in an attorney's trust account and is not a res over which the court has direct control.